IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:18-CV-18-RJ

CYNTHIA YOUMANS,

        Plaintiff/Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-29, -31] pursuant to Fed. R. Civ. P. 12(c). Claimant Cynthia Youmans ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the matter is remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on November 17, 2015, alleging disability beginning September 1, 2015. (R. 16, 243–55). The claims were denied initially and upon reconsideration. (R. 16, 77–144). A hearing before an Administrative Law Judge

("ALJ") was held on October 4, 2017, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 36–76). On December 21, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 13–35). On March 9, 2018, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) finding Claimant's impairments did not

3

meet or equal Listing 8.06 - Hidradenitis Suppurativa ("HS"), (2) failing to consider Claimant's fibromyalgia, chronic pain syndrome, and diabetic neuropathy, (3) failing to perform a function-by-function assessment and to provide a narrative discussion in violation of S.S.R. 96-8p, and (4) failing to account for Claimant's pain; moderate limitation in concentration, persistence, and pace; and expected absences from work in the hypothetical and RFC. Pl.'s Mem. [DE-30] at 9–21.[1]

### IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant engaged in substantial gainful employment after the alleged onset date through the end of December 2015. (R. 18–19). Therefore, the remainder of the ALJ's decision addressed the period beginning on January 1, 2016, when Claimant was not engaged in substantial gainful employment. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: hidradenitis suppurativa, cervical and lumbar degenerative disc disease, diabetes mellitus with non-proliferative diabetic retinopathy, major depressive disorder, and attention deficit hyperactivity disorder. (R. 19–20). The ALJ determined Claimant's polycystic ovarian disease was a non-medically determinable impairment and her obstructive sleep apnea, allergies, and hypercholesterolemia were non-severe impairments. (R. 20). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–22). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in moderate limitations in understanding, remembering, or applying information; interacting with others;

---

[1] The page numbers referenced are those original to Claimant's brief and not to those found in the CM/ECF footer, which differ because Claimant included her motion in the same document with her memorandum [DE-30].

concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding that Claimant had the ability to perform sedentary work[2] with the following limitations:

> frequent, as opposed to constant, rotation of the neck laterally and vertically; can occasionally use of the upper extremities to engage in overhead lifting, reaching, pulling, and pushing bilaterally but otherwise frequently use [] the upper extremities to lift, reach, push, and pull in all other directions; can frequently, as opposed to constantly, use the upper extremities to handle, finger, feel, [and] grasp bilaterally; can occasionally climb of stairs and ramps, kneel, and crouch; can occasionally use the lower extremities to operate foot and leg controls; can never crawl and/or climb ladders, ropes, or scaffolds; can [have] occasional exposure to temperature extremes, vibrations, wetness, dust, as well as strong odors/fumes; can never work around dangerous, moving mechanical parts and unprotected heights; and performing occupations that do not require binocular vision. Additionally, the claimant possesses the commonsense ability to understand and to complete detailed but uninvolved oral and written instructions in 2-hour intervals with a reasoning level of 3. The claimant is capable of successfully performing low stressed occupations that do not require her to complete a fixed number of production quotas and/or to perform fast-paced assembly line work. Furthermore, the claimant can have occasional superficial interaction with the general public and occasionally work in teams, in tandem, and with coworkers as well as supervision.

(R. 22–25). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 24). At step four, the ALJ concluded Claimant was unable to perform any past relevant work. (R. 25–26). At step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

in significant numbers in the national economy that Claimant can perform. (R. 26–27).

## V. DISCUSSION

### A. Listing 8.06 - Hidradenitis Suppurativa

Claimant contends the ALJ erred in finding her impairments did not meet or equal Listing 8.06 - Hidradenitis Suppurativa because the evidence cited is insufficient to support the determination. Pl.'s Mem. [DE-30] at 9–13. The Commissioner contends the ALJ's determination is supported by substantial evidence. Def.'s Mem. [DE-32] at 6–9.

> Hidradenitis suppurativa is
>
> a chronic skin disease which causes painful, boil-like lumps that form under the skin and often secrete pus and blood. HS occurs most often in areas where skin rubs together, such as the armpits, groin, and under the breasts. Symptoms usually begin after puberty. The first sign may be a single pocket of pus (abscess) or hard lumps associated with hair follicles. The abscesses or lumps often change to painful swollen clusters of skin sores that drain a bloody and often, bad smelling discharge. As the sores heal, they may leave hardened, rope-like scars or form tunnels under the skin (called sinus tracks) that can be disfiguring and make movement difficult. As time goes by, the skin lesions occur more often and get worse over time.
>
> . . . HS causes chronic pain, significant scarring, and can be socially isolating, but is not life-threatening. People with HS have an increased chance to feel depressed or anxious, which, along with chronic pain, may impact their quality of life.

U.S. Dep't of Health & Human Servs., Nat'l Insts. of Health, *Genetic & Rare Diseases Info. Ctr.*, (Dec. 17, 2018), https://rarediseases.info.nih.gov/diseases/6658/hidradenitis-supprativa (last visited Feb. 1, 2019). To satisfy Listing 8.06, a claimant must show "[h]idradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § 404, subpt. P, app. 1, § 8.06.

To show disability under the listings, a claimant may present evidence either that the

6

impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. §§ 404.1520(d), 404.1525(c)(3), 416.920(d), 416.925(c)(3); S.S.R. 17-2p, 2017 WL 3928306, at *2 (Mar. 27, 2017). In order to determine whether a medical impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [an] impairment(s) and its effects on [claimant] that is relevant to this finding. . . . [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. §§ 404.1526(c), 416.926(c). "For a claimant to qualify for benefits by showing that his . . . combination of impairments[] is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citation omitted).

The Fourth Circuit has found error where there is evidence in the record that would support a finding that a claimant's impairment meets a listing, but the ALJ fails to provide a full explanation in support of a contrary determination. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (concluding the ALJ's "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings") (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). However, "[p]laintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate

7

why her medical impairments do, in fact, meet all of the elements of a given listed impairment," she fails to meet her burden. *Id.* (citing *Sullivan*, 493 U.S. at 530).

At step three, the ALJ determined Claimant's skin impairment did not meet Listing 8.06 because "treatment records do not document findings of extensive skin lesions that persist for at least 3 months *despite the adherence to continuing treatment as prescribed* (Ex. 21F/7; 25F/1-2, 4-5, 7; 28F/3-4). Furthermore, no acceptable medical source designated to make equivalency findings has concluded that the claimant medically equaled a listing." (R. 20). In the RFC assessment, the ALJ recounted Claimant's testimony that "she develops large and painful boils and abscesses on her skin at the thighs, tailbone, and armpits due to hidradenitis suppurativa," she receives treatment that fails to completely relieve her symptoms, and she is limited in activities of daily living by her symptoms. (R. 23). The ALJ concluded that Claimant's "treatment has generally been successful managing her hidradenitis suppurativa flare-ups" when she is compliant with treatment recommendations. (R. 24). The ALJ noted there were "several instances in which [Claimant] failed to follow the medication recommendations of her primary care provider and her treating dermatologist, which suggests that her symptoms are not as severe as she alleges (Ex. 4F/19; 21F/7; 25F/1; 26F/3, 21, 26; 28F/2-3)." *Id.*

There is no dispute that Claimant has presented evidence of the requisite "extensive skin lesions involving both axillae, both inguinal areas or the perineum." Def.'s Mem. [DE-32] 6–7. The Commissioner asserts that the ALJ found Claimant's HS did not meet Listing 8.06 because the record lacked evidence (1) that the lesions persisted for at least three months, and (2) that Claimant adhered to continuing treatment as prescribed. *Id.* at 7–9. However, it is not clear that the ALJ considered whether Claimant's lesions persisted for at least three months. The ALJ stated

8

that "treatment records do not document findings of extensive skin lesions that persist for at least 3 months *despite the adherence to continuing treatment as prescribed* (Ex. 21F/7; 25F/1-2, 4-5, 7; 28F/3-4)." (R. 20). The ALJ placed emphasis on the words "*despite the adherence to continuing treatment as prescribed.*" *Id.* Therefore, it appears the ALJ was focused on the requirement of adherence to prescribed treatment rather than the duration requirement. Furthermore, the records cited by the ALJ are from only a one year period, May 2016 to May 2017, and appear related to adherence to treatment rather than whether Claimant's lesions persisted for three months. *Id.*

Ultimately, the ALJ's lack of discussion in support of his conclusion frustrates the court's review, and the court is "left to guess" about the ALJ's reasons for finding that Claimant's HS did not meet Listing 8.06. *Mascio v. Colvin,* 780 F.3d 632, 637 (4th Cir. 2015) (finding remand appropriate where the court was uncertain about how the ALJ arrived at his conclusions). Moreover, as discussed below, because there is evidence in the record that arguably supports a finding Claimant's HS meets all requirements of the listing, remand is appropriate. *See Radford,* 734 F.3d at 296 ("Given the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court and the district court from undertaking a 'meaningful review' of the finding that [the claimant] did not satisfy [the listing].").

First, with respect to the requirement that Claimant's HS lesions persisted for at least three months, an "impairment meets the duration requirement if [the] skin disorder results in extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed," and "persist [] mean[s] that the longitudinal clinical record shows that, with few exceptions, [the] lesions have been at the level of severity specified in the listing." 20 C.F.R. § pt. 404, subpt. P, app. 1, § 8.00G. Claimant visited the emergency department, her primary care provider, her

9

treating dermatologist, and urgent care for treatment related to abscesses at least 19 times over approximately a two-and-a-half year period, and at several of these visits an incision and drainage procedure was performed and/or antibiotics were administered. *See* (R. 410–19, 427–39, 471–78, 515–24, 533, 535, 548–56, 615–19, 630–37, 641–44, 669, 675–84, 796–804, 912–14) (treatment notes related to Claimant's HS from the period of Sept. 2014 to May 2017). While there are not treatment notes from three consecutive months over this period, Claimant testified that an abscess can persist for as long as 30 days. (R. 58). Therefore, the court cannot rule out that Claimant's abscesses persisted at listing level for more than three months. The ALJ's brief discussion of Claimant's HS at step three and in the RFC analysis sheds no light on this issue (R. 20, 24), and it is the ALJ's duty to consider in the first instance whether Claimant's impairment meets a listing. Thus, the record is "not so one-sided that one could clearly decide, without analysis, that [the listing] is not implicated." *Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. Feb. 9, 2016) (per curiam) (finding the district court erred in reviewing the record de novo to "discover facts to support or refute the ALJ's finding at Step Three").

Second, with respect to the adherence-to-treatment requirement, at step three the ALJ cited treatment notes from Dr. Pariser from May 17 and June 29, 2016, from emergency room visits on April 24 and 29 and May 2, 2017, and from a pain clinic visit on May 31, 2017. (R. 20). The ALJ did not discuss these medical records either at step three or in the RFC analysis; however, upon the court's review of the cited evidence, it is not clear that these treatment notes provide substantial evidence for the ALJ's conclusion that Claimant did not adhere to treatment as prescribed.

On May 17, 2016, Claimant's treating dermatologist, Dr. Pariser, noted Claimant was not using Silvadene cream because she thought it was for burn victims, and she was currently on

10

doxycycline but was worried it was no longer working. (R. 914). The ALJ cited this as evidence of Claimant's failure to adhere to continuing treatment as prescribed. (R. 20). A review of Claimant's prior medical records indicates that the Silvadene had been prescribed as an alternative to an over-the-counter cream that had been working well for Claimant. *See* (R. 533) (July 2015 treatment note indicating Claimant had previously been using an over-the-counter cream that, along with occasional courses of antibiotics, was managing her HS fairly well, but Dr. Pariser provided a prescription for generic Silvadene cream "to try as an alternative."); (R. 553–56) (August 17, 2015 treatment note where Claimant reported to her primary care provider, Dr. Kagan, that since she had been using the over-the-counter cream she had not experienced a further episode requiring antibiotics or surgery). However, by February 2016, Claimant was again experiencing abscesses. (R. 615–19) (Feb. 15, 2016 visit to Dr. Kagan related to three boils under her left arm that were very painful, and doxycycline was prescribed); (R. 641–44) (Mar. 11, 2016 visit to urgent care related to abscesses under both arms and in her groin area; she was prescribed Bactrim, directed to use moist heat, to rest, to continue with over-the-counter treatment, and to follow up with her dermatologist if not improved in one week). Claimant returned to Dr. Pariser on May 17, 2016, and they discussed Claimant's current medication regimen. (R. 914). Claimant explained she had not tried the Silvadene cream because she thought it was for burn victims and that doxycycline was no longer working. *Id.* Dr. Pariser encouraged her to apply warm compresses and to continue Silvadene cream, and he switched her antibiotic from doxycycline to minocycline. *Id.*

When viewed in the context of Claimant's prior treatment and medication history, the May 17, 2016 record does not demonstrate Claimant failed to adhere to prescribed treatment but instead

11

shows discussion between doctor and patient regarding what was working and not working for Claimant and adjustment of her medications. Alternatively, to the extent this may be considered failure to adhere to prescribed treatment, Claimant provided a reason why she had not used the Silvadene cream—she thought it was for burns. A claimant may have good reasons for not following a prescribed treatment; thus, possible reasons why an individual may not adhere to prescribed treatment must be considered, and the ALJ must explain how those reasons were considered. *Cf.* S.S.R. 16-3p, 2016 WL 1119029, at *9–10 (Mar. 16, 2016) (requiring, in the context of evaluating symptoms, the ALJ to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," "review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects," and "explain how [the ALJ] considered the individual's reasons in [the] evaluation of the individual's symptoms."). According to the U.S. National Library of Medicine, Silvadene cream is "a topical antimicrobial drug indicated as an adjunct for the prevention and treatment of wound sepsis in patients with second- and third-degree burns." Nat'l Insts. of Health, Dailymed, (Dec. 5, 2018), https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=c437213a-1cd4-445e-a39f-bbcacb9f746f (last visited Feb. 13, 2019). Claimant's confusion and hesitancy to use this drug before speaking further with her doctor may be justified, and the ALJ failed to explore that issue. The ALJ did not explain his reasoning at step three or in the RFC analysis where he again stated that Claimant failed to follow medication recommendations. (R. 20, 24).

On June 29, 2016, Dr. Pariser indicated Claimant reported "notable improvement" since switching to Solodyn/minocycline. (R. 913). Dr. Pariser noted Claimant had many questions about using minocycline long term, they discussed the "ins and outs," and planned to use

12

minocycline intermittently for flares and to use Silvadene cream for maintenance in between flares. *Id.* The ALJ cited this as evidence of failure to adhere to continuing treatment as prescribed. (R. 20). There is no apparent indication of failure to follow prescribed treatment in this record, and the ALJ failed to provide any discussion of it at step three or in the RFC analysis. (R. 20, 24).

On April 24, 2017, Claimant visited the ER regarding an abscess on the left underarm, an incision and drainage was performed, and Bactrim was prescribed. (R. 802–04). On April 29, 2017, Claimant visited the ER regarding another abscess. (R. 799–800). The doctor advised the abscess should be cut for incision and drainage, but Claimant declined, explaining that she wanted to try wet warm compresses first. (R. 800). She also requested to be put on doxycycline instead of Bactrim. *Id.* The doctor advised that doxycycline was not the best choice for that type of infection, but Claimant said it worked better for her and the doctor complied. *Id.* She was advised to return in a couple of days for re-evaluation or prior to that for any worsening or new symptoms. *Id.* It was also noted that Claimant was seen a few days earlier for another abscess, an incision and drainage was performed, she took Bactrim but discontinued it due to nausea, and the prior abscess was healing well. (R. 799).

The ALJ cited the April 24 and 29 treatment notes as evidence of failure to adhere to continuing treatment as prescribed. (R. 20). However, the ALJ again failed to consider this evidence in the context of Claimant's treatment history and failed to consider her reasons for not following the ER doctor's prescribed treatment. S.S.R. 16-3p, 2016 WL 1119029, at *9–10. First, Claimant indicated the Bactrim made her nauseated. Medication side effects may be a good reason for failing to adhere to a prescribed treatment. S.S.R. 16-3p, 2016 WL 1119029, at *9. Second, Claimant's desire to try conservative treatment of warm wet compresses and antibiotics prior to

13

incision and drainage was consistent with prior medical advice she received. (R. 643, 914). Moreover, when the conservative measures failed, she returned to the ER a few days later, on May 2, 2017, for the incision and drainage. (R. 796–98).

Finally, the ALJ cited a May 31, 2017 treatment note from a pain management visit where Claimant reported that her medication helped, that she did not take it if she did not need it, and that she was mostly taking it before physical therapy. (R. 745). This appears to be related to Claimant's Percocet prescription, and not her antibiotics for HS. *Id.* Furthermore, with regard to her Percocet, Claimant was advised to "make it last as long as possible" and to take it on average twice a day when doing physical therapy. (R. 748). Therefore, Claimant taking her Percocet as needed is consistent with how it was prescribed and does not appear to support the ALJ's conclusion.

The Commissioner also argues Claimant's ability to work as a professional fundraiser from September 2014 through June 2016 is evidence that her HS does not meet Listing 8.06 during the relevant time period. Def.'s Mem. [DE-32] at 9. First, Claimant's earnings in 2016 did not rise to the level of SGA. (R. 19). Second, Claimant testified that her employer allowed her to begin working from home in September 2015 as an accommodation because she was missing too much work due to doctor's appointments and hospital visits and to allow her to better care for herself. (R. 45–46). Finally, Claimant reported to a consultative examiner in April 2016 that she was only working about 20 hours a week. (R. 685). Therefore, the court finds this argument lacks merit.

The evidence cited by the ALJ at step three related to Listing 8.06 does not clearly support his conclusion that Claimant's HS fails to meet Listing 8.06, and the evidence of record is not so one-sided that the court could otherwise find, without further analysis from the ALJ, that the listing

14

is not met. Accordingly, this matter must be remanded for a fuller explanation by the ALJ.

**B.    The RFC Analysis**

Claimant alleges three errors implicating the RFC analysis: (1) failure to consider Claimant's impairments of fibromyalgia, chronic pain syndrome, and diabetic neuropathy; (2) failure to perform a function-by-function assessment and to provide a narrative discussion in violation of S.S.R. 96-8p; and (3) failure to account for Claimant's pain, moderate limitation in concentration, persistence, and pace, and expected absences from work in the hypothetical and RFC. Pl.'s Mem. [DE-30] at 13–21.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ, and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted).

Claimant contends the ALJ erred by failing to consider Claimant's impairments of

15

fibromyalgia, chronic pain syndrome, and diabetic neuropathy at step two or in the RFC analysis. Pl.'s Mem. [DE-30] at 13–14. The Commissioner contends the ALJ's omission was harmless error because the failure to consider the severity of an impairment at step two does not require remand if the effects of the impairment are appropriately considered at subsequent steps, and the ALJ discussed Claimant's pain as part of the RFC analysis; Claimant's fibromyalgia, chronic pain syndrome, and diabetic neuropathy were not severe because they did not significantly limit the ability to do basic work activities; and Claimant failed to allege these impairments caused any associated functional limitation in excess of the RFC finding. Def.'s Mem. [DE-32] at 10–13.

Claimant was diagnosed with and received treatment for fibromyalgia, chronic pain syndrome, and diabetic neuropathy (R. 739–50, 757–63, 810–14, 916), and she testified at the administrative hearing regarding how these impairments affected her functional abilities (R. 50–57). The Commissioner concedes the ALJ erred in failing to evaluate Claimant's fibromyalgia, chronic pain syndrome, and diabetic neuropathy, but argues the error was harmless. Def.'s Mem. [DE-32] at 10. None of the Commissioner's arguments is persuasive.

The Commissioner argues that Claimant's fibromyalgia, chronic pain syndrome, and diabetic neuropathy are not severe because they do not significantly limit the ability to do basic work activities. *Id.* at 10–11, 13. Even assuming this is so, the ALJ must consider the combined effects of all a claimant's impairments, even those that are non-severe. 42 U.S.C. § 423(d)(2)(B). Further, Claimant testified that her fibromyalgia makes her "very stiff," and, as a result, sometimes she is "not able get out of bed like [she] want[s] to." (R. 52). Claimant also testified that as a result of her neuropathy, fibromyalgia, chronic pain syndrome, and cervical impairment she is "never not in pain," and even with narcotic medication her pain is never less than a five or six on

16

a scale of one to ten with ten being excruciating. (R. 52, 54). Claimant testified that her ability to sit, stand, and walk were affected by her pain from these impairments such that she would be incapable of performing the reduced range of sedentary work found by the ALJ in the RFC analysis. Therefore, this argument lacks merit.

The Commissioner also argues that the ALJ's error was harmless because he discussed Claimant's pain as part of the RFC analysis, and the failure to consider an impairment and its functional effects at step two is harmless if considered at subsequent steps. Def.'s Mem. [DE-32] at 10–13. However, the ALJ's discussion of these impairments and Claimant's pain at the subsequent steps is inadequate to allow for meaningful review.

The ALJ appears to have discounted Claimant's testimony regarding her pain and its limiting effects because she lives alone, has a driver's license and can drive, performs household chores, uses a riding mower, watches television and uses a computer, and spends time with friends and her mother who lives nearby. (R. 23). While it is appropriate for the ALJ to take into account a claimant's daily activities, the ALJ must also consider the extent to which a claimant performs these activities. *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018).

Here, the ALJ did not consider the limited extent to which Claimant performed the daily activities mentioned. For example, Claimant testified that she drives if she has to, such as when she has to go to the pharmacy or to buy food, but for any long distance she has a friend pick her up, and she has to stop and get out of the car after about 10–15 minutes, which she did during her 15-minute drive to the hearing. (R. 43–44). Claimant testified that she lives alone and has difficulty with chores: she has to move clothes from the washer to the dryer a little at a time, she uses a robot vacuum, she can do the dishes but does not have many, she has a very small yard and

sometimes can use her riding mower but her brother sometimes cuts her grass, she cannot get on the ground to garden, and she struggles to change the bed sheets or pick things up off the floor so she tries not to make a mess. (R. 64–66). Claimant testified to very limited social activities: she has one friend she visits in the neighborhood but does not see her often, she visits her mother who live eight miles away but does not see her every week, she tries to attend church when she can but watches the sermons online when she is unable to go, and she watches a little television and uses Facebook daily for a "little bit" when she can tolerate it. (R. 65–66). It is unclear how these activities contradict Claimant's statements regarding the limiting effects of her impairments or otherwise demonstrate she is capable of competitive work. *See Lewis v. Berryhill*, 858 F.3d 858, 868 n.3 (4th Cir. 2017) (rejecting the ALJ's conclusion that "the ability to perform incremental activities interrupted by periods of rest," such as driving short distances, watching television, and performing tasks with assistance, demonstrates a claimant is capable of work).

The ALJ also stated that Claimant's statements about her symptoms were inconsistent because they were greater than expected in light of the objective evidence. (R. 24). The ALJ acknowledged that the record reflects a history of, among other things, neck and back pain and cervical and lumbar degenerative disc disease, but provides no discussion in the RFC analysis of these conditions and associated pain. *Id.* The ALJ also fails to expressly discuss Claimant's fibromyalgia, chronic pain syndrome, and radiculopathy and associated pain. *Id.* The Fourth Circuit recently explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, No. 17-2215, 2019 WL 193948, at *3 (4th Cir. Jan. 15, 2019). In determining Claimant's RFC, the ALJ failed to discuss any of the specific evidence related to these conditions and Claimant's pain or to provide an explanation

18

regarding how the RFC accounts for Claimant's pain and related limitations.[3] *Id.* ("[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.") (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Additionally, the ALJ's reliance on the fact that Claimant worked from September 2014 through June 2016 is questionable under the circumstances presented. (R. 24). As discussed above, Claimant testified that she struggled to work 40 hours due to her health problems, she was reprimanded and suspended for missing work due to doctor's appointments and hospital visits, her employer eventually let her work from home beginning in September 2015 and from that point she was no longer working full time, and Claimant's earnings in 2016 did not rise to the level of SGA. (R. 19, 45–47, 685). Accordingly, the ALJ's failure to adequately address all of Claimant's impairments and pain and the failure to perform a function-by-function analysis or to provide a sufficient narrative discussion in the RFC analysis requires remand.

The issues raised in Claimant's remaining assertion of error may be affected by the ALJ's further consideration of Claimant's RFC. Accordingly, these issues should receive additional consideration, as necessary, on remand. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by* 2012 WL 3580054 (E.D.N.C. Aug. 17, 2012).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-29] is

---

[3] The ALJ also failed to conduct the required function-by-function analysis, and the abbreviated narrative discussion is insufficient to remedy the error, which frustrates the court's review. *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016); *Mascio*, 780 F.3d at 636.

ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-31] is DENIED, and the matter is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

SO ORDERED, the 3rd day of April 2019.

Robert B. Jones, Jr.
United States Magistrate Judge